UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CJ CONSULTANTS, LLC, et al.,

    Plaintiffs,

v.

                                          Case No. 1:22-cv-3

                                          Hon. Hala Y. Jarbou

WINDOW WORLD, INC.,

    Defendant.
_____/

## OPINION

Plaintiffs CJ Consultants, LLC d/b/a/ Window World of Lansing, James Hindman, Cynthia Hindman, Hugh Stempfley, and Paulette Stempfley bring suit against Defendant Window World, Inc. under diversity jurisdiction. Plaintiffs bring six claims against Defendant, including: (1) breach of contract (Count I); (2) breach of implied duty of good faith and fair dealing (Count II); (3) declaratory relief (Count III); (4) trespass (Count IV); (5) violation of Section 8 of the Michigan Franchise Investment Law (MFIL), Mich. Comp. Laws § 445.1508 (Count V); and (6) violation of Section 27 of the MFIL, Mich. Comp. Laws § 445.1527. Before the Court is Defendant Window World, Inc's motion to dismiss all claims without prejudice in favor of contractual mediation procedures, and in the alternative, dismiss Counts I to IV without prejudice and Counts V and VI with prejudice (ECF No. 10). For the reasons stated below, the Court will grant Defendant's motion.

## I. BACKGROUND

Plaintiffs and Defendant have a franchisee/franchisor relationship. The franchise relationship began in 2012, with the 2012 Franchise Agreement. This agreement was for a term of five years. In 2017, the parties entered into another franchise agreement, the 2017 Franchise Agreement, for a term of ten years. Plaintiffs allege that about three years into the 2017 Franchise

Agreement, Defendant began requiring more onerous financial reporting. While Plaintiffs allege that they attempted to comply with these new requirements, Defendant terminated their agreement on November 22, 2021.

## II. STANDARD

A claim may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To determine whether a pleading fails to state a claim, courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint under Rule 12(b)(6) must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing

in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. ANALYSIS

**A. Mediation**

Defendant seeks to dismiss most of Plaintiffs' claims without prejudice in order to enforce the 2017 Franchise Agreement's contractual Informal Resolution/Mediation Procedures. Section 32(b) of the 2017 Franchise Agreement states:

> (b)   <u>Informal Resolution/Mediation</u>.  Before commencing any legal action against FRANCHISOR or its affiliates with respect to any claim or dispute and except as set forth in Section 32(c) below, FRANCHISEE shall submit to FRANCHISOR, through FRANCHISOR's registered agent as identified herein, a written notice which specifies in detail, the precise nature and grounds of such claim or dispute.  Within thirty (30) days after receiving the written notice, FRANCHISOR and FRANCHISEE shall meet in person or telephonically to discuss the issues raised in the written notice provided by FRANCHISEE ("Informal Discussions").  After the Informal Discussions have occurred and if the dispute has not been resolved, FRANCHISOR will have a period of twenty (20) days following the Informal Discussions to notify FRANCHISEE as to whether FRANCHISOR or its affiliates elects to exercise its option to submit such claim or dispute to mediation.  If FRANCHISOR elects to submit the claim or dispute to mediation, the mediation will occur in North Wilkesboro, North Carolina in accordance with the American Arbitration Association's Commercial Mediation Rules then in effect.  It is agreed that the mediator selected will have experience in franchise matters and/or franchise law.  FRANCHISEE may not commence any action against FRANCHISOR or its affiliates with respect to any such claim or dispute in court unless FRANCHISOR fails to exercise its option to submit such claim or dispute to mediation, or such mediation proceedings have been terminated either: (i) as the result of a written declaration of the mediator(s) that further mediation efforts are not worthwhile; or (ii) as a result of a written declaration by FRANCHISOR.  FRANCHISOR'S rights to mediation, as set forth herein, may be specifically enforced by FRANCHISOR.  Each party shall bear its own cost of mediation and FRANCHISOR and FRANCHISEE shall share mediation costs equally.  This agreement to mediate shall survive any termination, non-renewal, or expiration of this Agreement.

(2017 Franchise Agreement 26, ECF No. 26-2.)  Section 32(b) requires Plaintiffs as the Franchisee to engage in Informal Discussions with Defendant and submit to mediation if Defendant elects to

3

before filing suit in court. Defendant contends that this suit must be dismissed because Plaintiffs have failed to do so.

### 1. Unconscionability

Plaintiffs argue that this clause is unenforceable because it is unconscionable. A contract is unconscionable "'only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 369 (N.C. 2008)[1] (quoting *Brenner v. Little Red Sch. House Ltd.*, 274 S.E.2d 206, 210 (N.C. 1981)). The party asserting that a contract is unconscionable has the burden of proving both procedural and substantive unconscionability. *Id.* at 369-70. Procedural unconscionability can include "unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Id.* at 370 (citing *Rite Color Chem. Co. v. Velvet Textile Co.*, 411 S.E.2d 645, 648 (N.C. 1992)). Substantive unconscionability refers to "harsh, one-sided, and oppressive contract terms." *Id.* "[T]he presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability," but the court is to take a balancing approach to these two aspects. *Id.* ("[S]uch a finding may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa.").

In *Tillman*, the North Carolina Supreme Court found procedural unconscionability based on several factors:

> (1) the plaintiffs were rushed through the loan closing: (2) the closing officer indicated where to sign; (3) there was no mention of the offending terms at the closing; (4) the defendants admitted they would have refused to make the loan rather than negotiate terms of the arbitration agreement; and (5) "the bargaining power between [the] defendants and [the] plaintiffs was unquestionably unequal in

---

[1] The Court applies North Carolina law because the Franchise Agreement is "governed and interpreted by the laws of the state of North Carolina." (2017 Franchise Agreement 25.) And both parties cite North Carolina law.

>that [the] plaintiffs [were] relatively unsophisticated consumers contracting with corporate defendants who drafted the arbitration clause and included it as boilerplate language in all of their loan agreements."

*Westmoreland v. High Point Healthcare Inc.*, 721 S.E.2d 712, 717 (N.C. Ct. App. 2012) (quoting *Tillman*, 655 S.E.2d at 370). As the factors illustrate, procedural unconscionability focuses on the manner in which the contract was formed.

Plaintiffs contend that the 2017 Franchise Agreement is procedurally unfair because (1) "Defendant can unilaterally enforce a requirement to mediate in another state," and (2) "the Mediation Clause applies to 'any legal action against [Defendant] or its affiliates with respect to claim or dispute.'" (Pls.' Resp. to Def.'s Mot. to Dismiss 6, ECF No. 14 (quoting 2017 Franchise Agreement 26).) Neither of these arguments relate to the manner in which the contract was formed. These arguments focus on the substance of Section 32(b). Plaintiffs have failed to make a showing of procedural unconscionability.

As to substantive unconscionability, Plaintiffs argue that Section 32(b) is harsh, one-sided and oppressive because (1) only Plaintiffs' claims are subject to Section 32(b); (2) the timing and procedures are convoluted in order to "run out the clock on soon to expire limitation periods"; and (3) the requirement to mediate in North Carolina is only convenient to Defendant. Plaintiffs provide no support for how these factors are substantively unconscionable, except to point to one non-binding Ohio case for the third factor. In *Garrett v. Hooters-Toledo*, the court found that a forum selection clause was unreasonable because there was "little justification for the requirement that mediation and arbitration be conducted in" Jefferson County, Kentucky when the plaintiff was a resident of Ohio, and the defendant was also located in Ohio. 295 F. Supp. 2d 774, 783 (N.D. Ohio 2003). This reasoning is not applicable here when Defendant is a North Carolina corporation with its principal place of business located in North Carolina.

5

The timing and of procedures of Section 32(b) require Plaintiffs to submit a written notice to Defendant, after which Defendant must engage in informal discussion with Plaintiffs within 30 days. Defendant then has 20 days after the informal discussion to decide whether to elect to mediate the dispute. The Court is not persuaded that this requirement, or the other terms favorable to Defendant, are so manifestly unequal as to shock a person of common sense. "[A] bad bargain does not render a contract unconscionable absent evidence that the contract was tainted by, e.g., unequal bargaining positions, oppression, and the like." *Musselwhite v. Cheshire*, 831 S.E.2d 367, 378 (N.C. Ct. App. 2019); *see also Westmoreland*, 721 S.E.2d at 722 ("People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain." (citation omitted)). Plaintiffs fail to make a showing of unconscionability.

### 2. Wrongful Termination

Plaintiffs further argue that Defendant cannot assert its right to mediation when it wrongfully terminated the 2017 Franchise Agreement. Plaintiffs point to case law from Michigan and North Carolina for the proposition that a non-breaching party is excused from performance under the contract. *See Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311, 316 (Mich. 1949) ("He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." (internal citations omitted)); *Hatteras/Cabo Yachts, LLC v. M/Y EPIC*, 423 F. Supp. 3d 181, 189 (E.D.N.C. 2019) ("As a general rule, if either party to a bilateral contract commits a material breach of the contract, the non-breaching party is excused from the obligation to perform further." (internal citations omitted)).

However, Section 32(b) relates to dispute resolution, not performance. Plaintiffs provide no support for their argument that an allegation of breach relieves a party from abiding by contracted dispute resolution terms. *Contra, e.g., Kettering Anesthesia Assocs. v. PST Servs. Inc.*,

6

No. 3:13-cv-145, 2013 WL 4858693, at *1 (S.D. Ohio Sept. 11, 2013) (rejecting argument that an allegation of breach relieves a party from abiding by contracted dispute resolution terms). Additionally, Section 32(b) itself states that, "[t]his agreement to mediate shall survive any termination, non-renewal, or expiration of this Agreement," which Plaintiffs do not address. (2017 Franchise Agreement 26.)

### 3. Section 32(c) exemption

In the alternative, Plaintiffs argue that they are exempt from Section 32(b) because this dispute falls under Section 32(c). Section 32(c) states:

> (c)  Exempt Claims. The parties shall not be required to first attempt to mediate a controversy, dispute, or claim through mediation as set forth in Section 32(b) if such controversy, dispute, or claim concerns an allegation that a party has violated (or threatens to violate, or poses an imminent risk of violation) (i) any federally protected intellectual property rights in the Trademarks, the System, or in any Confidential Information, (ii) any claims pertaining to or arising out of any warranty issue; or (iii) any of the restrictive covenants contained in this Agreement.

(*Id.*) Plaintiffs misquote this section, truncating Section 32(c) to exempt "a 'controversy, dispute, or claim that a party has violated . . . the System.'" (Pls.' Resp. 9.) Plaintiffs go on to define the term "System" to argue that this dispute falls under the exemption because financial reporting, Defendant's grounds for termination, is a part of the "System." (*Id.*, 10.)

However, regardless of how "System" is defined in the 2017 Franchise Agreement, Section 32(c) clearly and unambiguously excludes claims concerning a violation of "*federally protected intellectual property rights*" in "the System." Plaintiffs' exclusion of this language fundamentally changes the meaning of Section 32(c). Section 32(c) does not exempt any claim concerning violation of the System as Plaintiffs argue, but only claims relating to federally protected intellectual property rights in the System. Plaintiffs do not argue that financial reporting relates to federally protected intellectual property rights, in the System or otherwise. Therefore, this dispute does not fall within Section 32(c)'s exceptions.

7

### B. Counts V-VI

Defendant moves to dismiss Counts V and VI for failure to state a claim. Plaintiffs contend that consideration of the merits of these counts is premature if they are required to abide by Section 32(b) due to "potential prejudice."[2] (Pls.' Resp. 14.) Plaintiffs do not articulate what this potential prejudice would be. Because the issues are fully briefed, the Court will address them.

#### 1. Mich. Comp. Laws § 445.1508 (Count V)

Mich. Comp. Laws § 445.1508 requires that a franchisor provide its prospective franchisee with certain disclosure statements prior to the execution of a binding franchise agreement.

> (1) A franchise shall not be sold in this state without first providing to the prospective franchisee, at least 10 business days before the execution by the prospective franchisee of any binding franchise or other agreement or at least 10 business days before the receipt of any consideration, whichever occurs first, a copy of the disclosure statement described in subsection (2), the notice described in subsection (3), and a copy of all proposed agreements relating to the sale of the franchise.

Mich. Comp. Laws § 445.1508(1). Plaintiffs allege that Defendant failed to provide these statements.

However, the MFIL does not apply to "the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee." Mich. Comp. Laws § 445.1503(3). Furthermore, § 445.1506 also exempts the requirements of § 445.1508 if "[t]here is an extension or renewal of an existing franchise or the exchange or substitution of a modified or amended franchise agreement where there is no interruption in the

---

[2] Plaintiffs argue that when a court is considering the arbitrability—or analogously, the mediation—of a dispute, "a court is not to consider the merits of the underlying claim." *United Steelworkers of Am., AFL-CIO-CLC v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 451 (6th Cir. 1998). However, the Sixth Circuit in *United Steelworkers* stated this in reference to "the guiding principles applicable to an action to compel arbitration under a collective bargaining agreement." *Id.* at 450. The issues here include neither arbitration nor a collective bargaining agreement.

operation of the franchise business of the franchisee, and no material change in the franchise relationship." Mich. Comp. Laws § 445.1506(e).

Defendant contends that § 445.1508 does not apply to the 2017 Franchise Agreement because it is a renewal of the 2012 Franchise Agreement. Defendant points to the Addendum attached to the 2017 Franchise Agreement, which states,

attached to and made a part of
WINDOW WORLD OF LANSING Franchise Agreement

1. Notwithstanding paragraph 2 of the Franchise Agreement entitled, "**Initial Franchise Fee**", no fee shall be due upon execution of this Agreement because this is a renewal of an existing franchise.

(2017 Franchise Agreement, ECF No. 26-2, PageID.659.) Defendant also points to the First Addendum to Renewal Franchise Agreement, attached as Exhibit 2 to Plaintiffs' First Amended Complaint, which includes, "Renewal Fee. No initial franchisee fee or renewal fee shall be due upon execution of the renewal franchise agreement." (Ex. 2 to First Am. Compl., ECF No. 26-3, PageID.661.) This First Addendum was signed on December 12, 2017, by the same parties on the same day as the 2017 Franchise Agreement. (*Id.*, PageID.663.)

Plaintiffs argue that they alleged in the First Amended Complaint that the 2017 Franchise Agreement was a new franchise agreement, not a renewal or extension, and that Defendant cannot rely upon matters outside the First Amended Complaint. However, the Court may consider exhibits attached to the First Amended Complaint, "so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt*, 835 F.3d at 640. These exhibits are both attached to and referred to in the First Amended Complaint. (First Am. Compl. ¶ 44, ECF No. 26 ("Plaintiffs, by and through CJC, and WWI entered into a new franchise agreement on or about December 13, 2017 . . . with a First Addendum to Renewal Franchise Agreement. . ."); 2017 Franchise Agreement; Ex. 2 to First Am.

9

Compl.) Plaintiffs' allegation is contrary to the plain language in the 2017 Franchise Agreement and the First Addendum.

Alternatively, Plaintiffs argue that § 445.1506(e) does not apply to the 2017 Franchise Agreement because § 445.1506(e) only exempts renewals or extension that have "no material change in the franchise relationship." Plaintiffs contend that they alleged that the 2017 Franchise Agreement contains new, material terms not present in the 2012 Franchise Agreement, and that the pleading standard requires that this Court accept this allegation as true on a motion to dismiss. While courts are to take well-pleaded facts as true, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). That certain new terms in the 2017 Franchise Agreement are a "material change" in the parties' franchise relationship is a legal conclusion that the Court need not accept as true. The First Amended Complaint alleges only that the term of ten years is a new, material term, but Plaintiffs' response to Defendant's motion to dismiss provides no support for this legal conclusion. Plaintiffs do not argue that the 2017 Franchise Agreement includes other material changes. Therefore, Plaintiffs' allegations fail to state a claim under § 445.1508, and the Court will dismiss Count V.

### 2. Mich. Comp. Laws § 445.1527 (Count VI)

Mich. Comp. Laws § 445.1527 makes void and unenforceable certain provisions in franchise agreements. Plaintiffs bring a claim under § 445.1527(c), which makes void and unenforceable "provision[s] that permit[] a franchisor to terminate a franchise prior to the expiration of its term except for good cause." Mich. Comp. Laws § 445.1527(c).

Defendant argues that this claim should also be dismissed because (1) the MFIL does not apply to renewals and extensions of an existing franchise agreement; (2) Plaintiffs fail to allege that any contractual provisions permit or authorize Defendant to terminate for reasons other than

good cause; and (3) § 445.1527(c) does not provide for a private cause of action. As stated above, Plaintiffs have not properly alleged that the 2017 Franchise Agreement is a new franchise agreement. Plaintiffs also do not address Defendant's second argument or point to any contractual provision that § 445.1527(c) would void.

> As to Defendant's third argument, Defendant points to § 445.1534 which states,
>
> Except as explicitly provided in this act, civil liability in favor of any private party shall not arise against a person by implication from or as a result of the violation of a provision of this act or a rule or order hereunder. Nothing in this act shall limit a liability which may exist by virtue of any other statute or under common law if this act were not in effect.

Mich. Comp. Laws § 445.1534. In *Franchise Management Unlimited, Inc. v. America's Favorite Chicken*, 561 N.W.2d 123 (Mich. Ct. App. 1997), the Michigan Court of Appeals held that "the Legislature clearly expressed its intent that the courts not imply a private right of action to remedy violations of the MFIL," relying on § 445.1534. *Id.* at 129; *see also Drery v. Marathon Oil Corp.*, No. 200674, 1998 WL 1989877 (Mich. Ct. App. 1998) (following the ruling in *Franchise Management* that private causes of action may not be implied under the MFIL).

Plaintiff points to *Geib v. Amoco Oil Co*, 29 F.3d 1050 (6th Cir. 1994) and *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038 (6th Cir. 1990) to argue that § 445.1527 creates an implied private cause of action. The Sixth Circuit in *Geib* noted that § 445.1534 conflicts with the holding in *General Aviation* that § 445.1527 creates a private cause of action, so it certified the question to the Supreme Court of Michigan. However, the Supreme Court of Michigan declined to address this question. *In re Certified Question*, 527 F.W.2d 513, 513 (Mich. 1994). Thereafter, the Court in *Geib* followed its prior holding in *General Aviation* to decide the issue. *Geib v. Amoco Oil Co.*, 163 F.3d 329, 330 (6th Cir. 1995).

The court in *Franchise Management* acknowledged that its holding contradicts the Sixth Circuit's holding in *Geib* and *General Aviation*. *Franchise Mgmt.*, 561 N.W.2d at 252 n.3. It

nevertheless stated that the Sixth Circuit's interpretation is not binding on the Michigan Court of Appeals in declining to imply a cause of action based on violations of a different section of the MFIL. *Id.*

If the Michigan Supreme Court has not provided clear guidance on an issue, the Court will consider the decisions of the Michigan appellate courts as "authoritative absent a *strong showing* that the [Michigan Supreme Court] would decide the issue differently." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.,* 898 F.3d 710, 715 (6th Cir. 2018) (emphasis in original). Plaintiffs' reliance on Sixth Circuit cases decided prior to more recent Michigan Court of Appeals decisions on this subject is not "a *strong showing*" that the Michigan Supreme Court would decide the issue differently. *Id.* Therefore, the Court will follow the holding in *Franchise Management* and dismiss Plaintiffs' claim under § 445.1527.

### C. Stay

In lieu of dismissal for failure to abide by the 2017 Franchise Agreement's contractual Informal Resolution/Mediation Procedures, Plaintiffs ask for a stay pending the implementation of the mediation procedures. "'When confronted with objections that plaintiffs have initiated litigation without satisfying arbitration or mediation requirements, . . . district courts are vested with discretion to determine whether stay or dismissal is appropriate.'" *LoanCraft, LLC v. First Choice Loan Servs., Inc.*, No. 12–10138, 2012 WL 628617, at *3 (E.D. Mich. Feb. 27, 2012) (quoting *N-Tron Corp. v. Rockwell Automation, Inc.*, Civil Action No. 09-0733-WS-C, 2010 WL 653760, at *7 (S.D. Ala. Feb. 18, 2010)). Plaintiffs argue that they would suffer harm if this case were dismissed because MFIL claims are subject to a four-year statute of limitations. Given that the Court will dismiss the MFIL claims, this harm is no longer applicable. Plaintiffs further argue that they will suffer harm because Defendant will refile this dispute in North Carolina if this case is dismissed. However, Defendant has represented that it will not file a new action or make a

motion to move venue to North Carolina if mediation is unsuccessful. (Def.'s Reply 3 n.2, ECF No. 19.) In any case, Plaintiffs can address any issues with the court if or when the case is refiled. Therefore, the Court is not persuaded that a stay is warranted.

## IV. CONCLUSION

For the reasons stated, the Court will grant Defendant's motion to dismiss. An order and judgment will enter consistent with this Opinion.

Dated: September 20, 2022 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE